IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KAREN WEINERT                          :

   Plaintiff,                         :
                                                  Case No. 3:07cv358
   vs.                                :
                                                  JUDGE WALTER HERBERT RICE
NORTHEAST MILITARY SALES, INC.,        :

   Defendant.                         :

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. #18); JUDGMENT TO BE ENTERED ON BEHALF OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

---

Defendant Northeast Military Sales, Inc. ("NMS") employed Plaintiff Karen Weinert for twelve years prior to her termination. Doc. #1 ¶3. NMS is a contractor that operates the deli/bakery department at the Wright-Patterson Air Force Base Commissary ("Commissary"). Doc. #22 (Weinert Dep.) at 7. The present dispute involves certain events, including Weinert's termination, which transpired after Weinert relayed suspicions of illegal drug conduct in her department.

Weinert's Complaint alleges two claims for relief, to wit: (1) retaliation (Count I); and (2) wrongful discharge in violation of public policy (Count II). Doc. #1. NMS moves for summary judgment on both claims. Doc. #18.

The Court will first review the pertinent facts and then set forth the standard for ruling on motions for summary judgment. The Opinion will conclude with an

analysis of the merits of the Defendant's Motion.

I.   FACTS[1]

On January 31, 2007, Weinert was speaking to Tony Glassburn, who was employed by the Defense Commissary Agency ("DeCA") and worked in the Commissary meat department.[2] Doc. #1 ¶6; Doc. #21 (Glassburn Dep.) at 3; Doc. #22 (Weinert Dep.) at 23. During this conversation, Weinert testifies that she told Glassburn, "the next time the [drug] dogs come through . . . maybe they should walk through the Deli/Bakery Department." Doc. #22 (Weinert Dep.) at 23. In making this accusation, Weinert denies that she pointed to any specific employee by name, as the likely possessor of illegal drugs. Id. at 26. Weinert states that she learned of her suspicions of employee drug possession from another employee,

---

[1] Since this case comes before the Court on the Defendant's Motion for Summary Judgment, the Court sets forth the facts and circumstances giving rise to such Motion in the manner most favorable to the Plaintiff, as the party against whom the Motion is directed. Servo Kinetics, Inc. v. Tokyo Precision Instruments, 475 F.3d 783, 790 (6th Cir. 2007).

[2] The parties do not explain the relationship, if any, between DeCA, which oversaw Glassburn's work in the meat department, and NMS, which operated the deli/bakery department. The web-site for DeCA indicates that it operates "a worldwide chain of commissaries providing groceries to military personnel, retirees and their families." http://www.commissaries.com/about_us.cfm. Thus, it would appear that DeCA operates some of its commissary departments itself (e.g., the Wright Patterson AFB Commissary meat department) and hires contractors to operate other departments (e.g., the Wright Patterson AFB Commissary deli/bakery department). Regardless of the specifics of the relationship between the two employers, however, it is clear that Glassburn was not Weinert's supervisor or any other responsible officer of her employer, which will become important herein. See *supra*, note 5.

2

Cheryl Yoder. Id. at 23-24.

After speaking with Weinert, Glassburn approached his supervisors (the Commissary administrator and director) about the allegations of drugs in the Commissary and they directed him to prepare a statement, which he did. Doc. #21 (Glassburn Dep.) at 5, 10. That same day, a drug investigation and search occurred in the deli/bakery department, which specifically targeted Weinert's manager, Terri Bullock, who was strip-searched.[3] Doc. #18, Ex. #1 (Barrow Aff.) ¶ 6. The search turned up no evidence of drug use or drug possession. Id. ¶ 8.

No one informed Defendant NMS (the operator of the deli/bakery) about the drug accusations or search until after the search occurred. Id. ¶ 6. By the following day, NMS's Director of Human Resources, Robert Barrow, had commenced an investigation into the incident and had suspended Weinert while the investigation proceeded. Doc. #18, Ex. #2 (Brown Aff.) ¶ 6; Doc. #22 (Weinert Dep.) at 26-27.

NMS's Area Supervisor, Robin Brown, conducted the investigation, on behalf of Barrow, and received very different stories from the people she interviewed. DeCA employee Glassburn reported to Brown that Weinert specifically named her

---

[3]The implication is that Glassburn's supervisors directed that the search take place, but the parties do not specifically state this. There is also an implication that Glassburn's written statement specifically targeted Bullock (see Doc. #18, Ex. #2 (Brown Aff.) ¶ 4 ("I was informed that Terri Bullock was . . . subjected to a strip-search based upon a report that she was in possession of illegal drugs")), but the parties have either not filed that statement with the Court or not otherwise brought the location of that document to the Court's attention.

3

manager, Bullock, as the possessor of the illegal drugs, while Weinert denied that she named Bullock. Doc. #18, Ex. #2 (Brown Aff.) ¶ 7. Yoder (the NMS employee who had allegedly told Weinert about the drug suspicions) reported that it was Weinert who had told her about suspicions of employee drug possession, not the other way around. Doc. #18, Ex. #3 (Yoder Aff.) ¶¶ 3, 5. Also, another NMS employee reported to Brown that Weinert had recently stated that she "hated Terri Bullock", while yet another employee stated that Weinert sometimes called Bullock derogatory names and often said that she hated Bullock. Doc. #18, Ex. #4 (Rector Aff.) ¶¶ 3, 5; Doc. #18, Ex. #5 (Sorg Aff.) ¶¶ 3, 5.

Brown presented the results of her investigation to Barrow, who concluded that Weinert's statements were in direct contradiction to all of the other witness statements and, further, that the weight of the evidence indicated that Weinert hated Bullock and that this hatred had culminated in her spreading false and malicious rumors about Bullock possessing illegal drugs. Doc. #18, Ex. #1 (Barrow Aff.) ¶¶ 16-17. Barrow then decided to terminate Weinert for making a false and malicious statement about a fellow employee.[4] Id. ¶ 18. Weinert's termination

---

[4]NMS states that it also terminated Weinert for violating its company policy. Doc. #22, Ex. C at 2 (NMS Payroll Change Form). The policy it points to in support of this alternative reason for Weinert's termination is not supportive, however, because it requires anyone who "observes" certain drug activities to report such observations to management or the Director of Human Resources. Doc. #22, Ex. A (NMS Employee Handbook) at 19. In this case, there is no evidence to indicate that Weinert ever "observed" any drug misconduct. There is evidence, however, that she did not report any of her "suspicions" of drug misconduct to either her management or the Director of Human Resources of her company.

was effective on February 5, 2007. Doc. #22 (Weinert Dep.) at 29.

II.     SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in

support of its position. Celotex, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that

might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

III.  RETALIATION

As her first claim for relief, the Plaintiff asserts that the Defendant retaliated against her for "engag[ing] in a protected activity by informing Defendant, her employer, that employees may be possessing illegal drugs at work." Doc. #1 ¶ 9. In order to demonstrate a *prima facie* case of retaliation, a plaintiff must show that "1) he or she engaged in activity which would bring him or her under the protection of [a] statute, 2) was subject to an adverse employment action and 3) there was a causal link between the protected activity and the adverse employment action." Klepsky v. UPS, 489 F.3d 264, 271-72 (6th Cir. 2007) (quoting Wood v. Dorcas,

7

142 Ohio App. 3d 783, 757 N.E.2d 17, 23 (Ohio 6th App. Dist. 2001)). If a plaintiff is able to make out a *prima facie* case, "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the action taken. Should the employer be able to state a non-retaliatory reason for the action taken, the burden then returns to the plaintiff to come forward with some evidence to show that the employer's stated reason was, in fact, pretext." Id. at 272.

The Court has struggled with the Defendant's arguments on this claim. In its memorandum in support of its Motion for Summary Judgment, the Defendant does not mention the elements of a *prima facie* case of retaliation, nor does it argue that the Plaintiff does not satisfy any of the elements of that test. Rather, it focuses only on the alleged legitimate, non-retaliatory reason for terminating the Plaintiff and the Plaintiff's lack of evidence as to pretext. See Docs. #18, #26. This approach (basically conceding that the Plaintiff had satisfied her *prima facie* case) would certainly be permissible, had the Plaintiff clearly established the elements of her case. In this case, however, it seems clear that the Plaintiff has not established those elements.

There is no question that NMS subjected Weinert to an adverse employment action when it terminated her (second prong). The question, then, is whether she engaged in an activity that would bring her under the protection of a statute (first prong) and whether there was a causal link between the protected activity and her termination (third prong). The Court finds no evidence, however, that the Plaintiff

has satisfied the first element of her case, in that she has not identified a statute that protects the type of conduct in which she participated.[5]

Because the Defendant has not made an argument pertaining to the Plaintiff's *prima facie* case, the Court will proceed on the assumption that the Plaintiff has satisfied her *prima facie* case and turn to an analysis of the Defendant's alleged legitimate, non-retaliatory reason for terminating the Plaintiff and the Plaintiff's evidence of pretext.

---

[5]The Plaintiff makes two references to Ohio's whistleblower statute, Ohio Revised Code § 4113.52, in the context of her public policy argument (Doc. #25 at 5-6), and the Defendant seems to assume that this is the statute at issue, in the retaliation claim (see Doc. #26 at 9-10). Ohio's § 4113.52 is not applicable to the present facts, however. In the only part of that statute that could arguably apply to the facts of this case, there is a requirement that the employee report suspected violations of law to "the employee's supervisor or other responsible officer of the employee's employer" and subsequently file with that supervisor or officer "a written report that provides sufficient detail to identify and describe the violation." Ohio Rev. Code Ann. § 4113.52(A)(1)(a). Only when an employee complies with these requirements and the employer does not correct the violation, or make a reasonable effort to correct it, may the employee "blow the whistle" and receive protection from the statute. Id. Ohio courts have required strict compliance with the terms of this statute before allowing a retaliation claim to proceed. E.g., Kulch v. Structural Fibers, Inc., 78 Ohio St. 3d 134, 142, 677 N.E.2d 308 (1997) ("The fact that appellant reported to OSHA without having notified his employer both orally and in writing concerning the alleged health and safety violations is fatal to his claim for protection under R.C. 4113.52(A)(1)(a)."); Wood v. Dorcas, 142 Ohio App. 3d 783, 791 (Ohio 6th App. Dist. 2001) ("R.C. 4113.52 protects only employees who are disciplined or discharged because of their protected whistle blower activity. The party seeking protection of the statute must show that he or she was disciplined in retaliation for a protected act.").

In this case, despite the assertion in the Complaint that the Plaintiff "informed Defendant, her employer" about potential illegal drug conduct, the undisputed facts show that the Plaintiff relayed her suspicions to Glassburn, and Glassburn was not only not her "supervisor or other responsible officer of the [Plaintiff's] employer", he did not even work for the same employer. Thus, the Plaintiff cannot seek protection under Ohio's whistleblower statute.

The Defendant asserts that it terminated the Plaintiff for making false and malicious statements about her manager and that this decision was based on the interviews the Defendant conducted, as well as its perception that the Plaintiff's statements in those interviews were directly contradicted by the statements made by the other four interviewees. The Defendant goes on to assert that it is not the Court's province to question its business judgment, but rather only to determine whether the Plaintiff has proven a retaliatory motive. Doc. #18 at 4 (citing Wrenn v. Gould, 808 F3d 493, 502 (6th Cir. 1987)). The Plaintiff, on the other hand, argues that there is a credibility issue at stake as to whether the Plaintiff or the other persons interviewed were more believable and that such an issue is not appropriate for resolution at the summary judgment stage of litigation. Doc. #25 at 8-12. The Plaintiff also argues that the close proximity in time between her report of drug suspicions and her termination weighs in favor of a pretext conclusion. Id. at 11-12 (citing Buehler v. Ampam Commer. Midwest, 2007 Ohio App. LEXIS 4226, *13 (Ohio 1st App. Dist. Sept. 14, 2007)).

In order to show that an employer's proffered nondiscriminatory reason is a pretext for retaliation, a plaintiff is "required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994) (citation omitted). As to the business judgment

10

defense, the Sixth Circuit instructs that "the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." Wexler v. White's Fine Furniture, 317 F.3d 564, 576 (6th Cir. 2003) (citations omitted).

The Court finds nothing in the record before it to indicate that the Defendant terminated the Plaintiff based on anything other than its honest belief that she spread unfounded malicious gossip about her manager to an outsider. In making this conclusion, the Court is not balancing the credibility of the persons who were interviewed in the investigation. Rather, even assuming that the Plaintiff was being honest in her interview and the other four persons were not, there is no evidence to indicate that the Defendant had reason to know this, which is the key to the Court's decision here. See Wexler, 317 F.3d 564. On the contrary, the evidence indicates that the Defendant conducted a thorough interview of all of the persons involved in the incident and, based on its interpretation of the gathered facts, made a reasoned decision. Furthermore, the proximity in time between the reported drug allegations and the Plaintiff's termination does not weigh in favor of a contrary conclusion, since her reported drug allegations were one and the same as what the Defendant had concluded to be the false and malicious rumors.

Because the Defendant has established a legitimate, non-retaliatory reason for terminating the Plaintiff and because the Plaintiff has not established that there

11

is a genuine issue of material fact that the Defendant's stated reason was, in fact, a pretext for retaliation, the Defendant's Motion for Summary Judgment (Doc. #18) is SUSTAINED, as to Count I.

IV. TERMINATION IN VIOLATION OF PUBLIC POLICY

As her second claim for relief, the Plaintiff alleges that the Defendant terminated her in violation of public policy. The Ohio Supreme Court has recognized a tort for wrongful termination in violation of public policy. <u>Collins v. Rizkana</u>, 73 Ohio St. 3d 65, 652 N.E.2d 653 (1995). The elements of this claim are as follows:

1. That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).

2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).

3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).

4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

<u>Id.</u> at 69-70 (alterations and quotation omitted). The Ohio Supreme Court further instructs that the clarity and jeopardy elements are questions of law to be decided by the court, while the causation and overriding justification elements are generally questions for the trier of fact. <u>Id.</u> at 70.

Once again, the Court is puzzled by the Defendant's approach on this claim, wherein it focuses only on the causation and overriding justification elements. See Docs. #18, #26. It appears to the Court that the Plaintiff has not identified a "clear public policy" under which she is proceeding, either in her Complaint or in her subsequent memorandum in opposition to the Defendant's pending Motion.[6]

---

[6]The Complaint generally pleads the clarity element of the Plaintiff's claim using the following language:

> A clear public policy (hereinafter "the policy") exists, as is manifested in a state or federal constitution, statute or administrative regulation, or in the common law, against terminating employees under the circumstances which Plaintiff was terminated.
>
> Such policy included, but is not limited to, reporting alleged illegal drug possession in the workplace.

Doc. #1 ¶¶ 16-17.

Although the Defendant does not argue this point in its Motion, the Plaintiff attempts to address it, in her memorandum in opposition, by suggesting that the public policy that covers her actions is either the policy underlying the whistleblower statute (Ohio Rev. Code Ann. § 4113.52) or a general policy regarding "workplace safety", which is purportedly "a well defined and dominant public policy based on federal, state, and common law." Doc. #25 at 5-6 (citing, although it is actually quoting, Akron Metro. Hous. Auth. v. Local 2517, AFSCME, 161 Ohio App. 3d 594, 597, 831 N.E.2d 493 (Ohio 9th App. Dist. 2005)).

As to the whistleblower statute, the Court has already discussed *supra* why this statute is not applicable to the present facts. As to the workplace safety argument, there is no evidence on the record that the Defendant did not provide a safe work environment for the Plaintiff. Contrast Akron Metro. Hous. Auth., 161 Ohio App. 3d 594 (in accordance with public policy of providing safe work environment for other employees, court found it appropriate to terminate recalcitrant employee after verbal altercation with supervisor and upon mental health professional advice that it was unsafe for him to return to work).

On another note, even if this Court were to overrule the pending Motion for Summary Judgment, this case could not presently proceed to trial, given that the identification of a "clear public policy" is a question of law and no such public policy has either been pointed to by the Plaintiff or otherwise recognized by this

Because the Defendant has not made this argument, however, the Court will turn to an analysis of the arguments the Defendant did make, beginning with a consideration of whether the Plaintiff has set forth sufficient evidence to satisfy the overriding justification element of her public policy claim and then, if necessary, consider the causation element.

Courts have recognized that the burden shifting approach in a retaliation claim, as outlined above, mirrors the third and fourth element of a public policy termination claim. Hall v. ITT Auto., 362 F. Supp. 2d 952, 963 (N.D. Ohio 2005). Specifically, the two causation elements correlate with each other and the non-retaliatory reason/pretext steps in the retaliation analysis mirror the overriding justification element of the public policy tort claim. Kittle v. Cynocom Corp., 232 F. Supp. 2d 867, 875 (S.D. Ohio 2002).

Thus, the Defendant relies on the same argument, as to its overriding justification, as it did previously, with regard to its legitimate, non-retaliatory reason and lack of pretext. For the same reasons the Court found this argument compelling, *supra*, it concludes that the Plaintiff has not set forth a genuine issue of material fact as to the Defendant's overriding justification in terminating her. Because the Plaintiff has failed to satisfy the fourth element of her public policy claim, it is unnecessary for the Court to consider her arguments pertaining to the

---

Court, at this point in time.

third (causation) element of that claim, and the Defendant's Motion for Summary Judgment (Doc. #18) is SUSTAINED, as to Count II.

V.   CONCLUSION

The Defendant's Motion for Summary Judgment (Doc. #18) is SUSTAINED, in its entirety. Judgment is to be entered on behalf of the Defendant and against the Plaintiff.

The above captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

December 19, 2008

      /s/ Walter Herbert Rice
    WALTER HERBERT RICE, JUDGE
    UNITED STATES DISTRICT COURT

Copies to:
Counsel of record